# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DIMITRI MOSS,**

                **Plaintiff,**

v.                                         Case No. 21-CV-1431

**LYNN DOBBERT,** *et al.*,

                **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

Plaintiff Dimitri Moss, who is represented by counsel, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 2.) Moss was allowed to proceed on an Eighth Amendment deliberate indifference claim against Lynn Dobbert, Koreen Frisk, Bridget Rink (k/n/a Bridget Crouse), Maryah Martin, Angela Thompson, Katherine Thompson, and Debra Bellin for failing to treat his kidney injury.

The defendants moved for partial summary judgment on the grounds that Moss failed to exhaust his administrative remedies. (ECF No. 13.) In the brief supporting their motion, the defendants further categorize Moss's allegations into three separate categories of claims—The First Set of Claims, from September 18, 2018, to March 13, 2019, when Moss was incarcerated at New Lisbon Correctional Institution (New Lisbon) and cared for by Dobbert, Martin, Frisk, and Rink; The Second Set of Claims, from March 13, 2019 until his surgery on or around April 7,

2019, when Moss was incarcerated at Redgranite Correctional Institution (Redgranite); and the Third Set of Claims, from April 7, 2019 through May 3, 2019, when Moss sought medical care post-surgery. (ECF No. 14 at 6-7.) Moss did not object to the defendants' further clarification of his claims. The defendants moved for partial summary judgment on the First Set of Claims and the Third Set of Claims.

The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 7.) For the reasons stated below, the court grants the defendants' motion for partial summary judgment on exhaustion grounds.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

2

(1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing

3

suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

"An inmate may use the ICRS to raise issues regarding policies, rules, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code § DOC 310.06(1). "Prior to filing a formal complaint, an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin. Code § DOC 310.07(1). An inmate then must "file a complaint within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code § DOC 310.07(2). Extensions may be given at the discretion of the ICE and upon a showing of good cause. *Id.* "An inmate shall submit a signed complaint by placing it in a receptacle designated for complaints or by submitting it to the ICE office through institution or USPS mail." Wis. Admin. Code § DOC 310.07(8). ICE "shall give written notice to the inmate within 10 days of collection that the complaint has been received." Wis. Admin. Code § DOC 310.10(4).

The ICE then may accept the complaint and make a recommendation or reject the complaint for one of the ten reasons listed in § DOC 310.10(6) within 30 days from the date of receipt. Wis. Admin. Code § DOC 310.10 (2), (9). If the ICE rejects the complaint, an inmate may appeal the rejection to the appropriate

4

reviewing authority "who shall only review the basis for the rejection of the complaint." Wis. Admin. Code § DOC 310.10(10).

The ICE may also return a defective complaint and allow an inmate to correct the defects and resubmit within 10 days. Wis. Admin. Code § DOC 310.10(5). The ICE may return a complaint for failing to informally resolve the issue prior to filing the complaint; for late complaints; for failing to be submitted on the appropriate form; for failing to be legibly written; for not being filed under the prisoner's legal name; for not including the prisoner's signature; for exceeding 500 words or 2 pages; and for failing to contain only one clearly identified issue. Wis. Admin. Code § DOC 310.07.

When the ICE makes a recommendation, the reviewing authority shall make a decision within 15 days. Wis. Admin. Code § DOC 310.11(1). If an inmate does not receive a decision within 45 days after the date of acknowledgement by the ICE, he may directly appeal to the CCE. Wis. Admin. Code § DOC 310.11(3). Otherwise, an inmate may appeal a reviewing authority's decision to the CCE within 14 days after the date of the decision. Wis. Admin. Code § DOC 310.12(1). The CCE then "shall recommend that the reviewing authority decision be affirmed or dismissed, in who or in part, and send its recommendation to the secretary [of the DOC] within 45 days of receipt of the appeal." Wis. Admin. Code § DOC 310.12(9). The secretary shall make a decision within 45 days following the receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). "If the inmate does not receive the secretary's written decision within 90 days of the date of receipt of the

5

appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted." Wis. Admin. Code § DOC 310.13(4).

*Moss's Underlying Claims*

On September 10, 2018, while plaintiff Dimitri Moss was incarcerated at New Lisbon, he slipped and fell while working in the kitchen. (ECF No. 18, ¶¶ 1-2.) Moss experienced a sharp pain in his hip and back immediately after he fell. (*Id.*, ¶ 3.) Shortly after his fall, Moss noticed he was urinating blood. (*Id.*, ¶ 4.) On September 12, 2018, Moss was sent to Mile Bluff Medical Center and was diagnosed with an "acute traumatic injury to [his] left flank . . .[with] pain and heavy hematuria." (*Id.*, ¶¶ 5-6.) The recommendation from Mile Bluff was for Moss to follow up with his primary care provider, who was directed to consider a urology consultant. (*Id.*, ¶ 7.)

Between September 2018 and January 2019, Moss made several Health Services Requests (HSRs) requesting to be treated by Health Services Unit (HSU) staff for his pain and blood in his urine. (*Id.*, ¶¶ 8-19.) On March 13, 2019, Moss was transferred to Redgranite. (*Id.*, ¶ 20.) Once he arrived at Redgranite, he submitted an HSR to be seen by HSU, and within the HSR, he noted that he was still urinating blood and waiting on a treatment plan. (*Id.*) Moss wrote three more HSRs dated March 24, 2019, April 1, 2019, and April 7, 2019. (*Id.*, ¶¶ 21-23.) On April 15, 2019, Moss underwent a diagnostic procedure. (*Id.*, ¶ 24.) After his procedure, Moss contacted HSR two more times complaining that his condition still had not been treated. (*Id.*, ¶¶ 25-26.)

*Moss's Attempts to Exhaust His Administrative Remedies*

Once Moss transferred to Redgranite, an unnumbered inmate complaint was received by the ICE office on April 29, 2019, (The April 29 Inmate Complaint). (ECF No. 15, ¶ 2.) In the inmate complaint, Moss stated that he fell at New Lisbon on September 10, 2018, sustained a kidney injury, and has been denied medical treatment and surgery. (ECF No. 16-2 at 3.) In the details section of his inmate complaint, he wrote in relevant part:

> On 9-10-18, I suffered a major kidney injury from a slip and fall in the main kitchen at [New Lisbon]. I was seen by HSU and they told me nothing was wrong. I continued to complaint of urinating blood and no one bothered to investigate. Finally after months of urinating blood, it was determined that my kidney was damaged by the fall and that I needed surgery. I was moved to [Redgranite] where I again complained of urinating blood, yet all the RNs here refused to follow nursing protocols and refused to see me.

(*Id.*) On May 3, 2019, ICE Beier wrote Moss a letter indicating that he was returning his complaint pursuant to Wis. Admin. Code § DOC 310.10(5). (*Id.* at 1.) The letter explained two reasons why the inmate complaint was being returned—(1) he needed to attempt to informally resolve the issue pursuant to Wis. Admin. Code § 310.07(1); and (2) his complaint contained more than one clearly identified issue. Regarding the second reason, Beier elaborated, stating, "Your submission alleges denied medical treatment at two different correctional facilities. This medical treatment would have been provided by different medical professionals. These are two different issues and will need to be separated and filed on separately." (*Id.*) Moss was instructed to file a corrected complaint within 10 days of receipt of the

7

letter. (*Id.*) He was notified that he gets only one opportunity to file a corrected inmate complaint. (*Id.*)

Moss filed another inmate complaint on May 14, 2019, that was received by the ICE office on May 17, 2019 (The May 17 Inmate Complaint). (ECF No. 16-3 at 2.) The inmate complaint was substantially similar to The April 29 Inmate Complaint. Specifically, it still complained about the lack of medical care at both New Lisbon and Redgranite. (*Id.*)

On May 21, 2019, Beier sent Moss another letter informing him that his inmate complaint would not be processed because he failed to follow the instructions from the May 3, 2019 letter. (*Id.* at 1.) The letter noted that his corrected complaint still complained about medical treatment at two separate facilities. It also noted that his complaint was filed late—it should have been received by May 13, 2019, and was not received until May 17, 2019. (*Id.*)

Moss states that he believed he was submitting a complaint about one issue—the general lack of care of his kidney injury. (ECF No. 18, ¶ 27.) Moss also notes that because return letters are not hand delivered to inmates, he received the return letter a few days after May 3, 2019, so he thought he had more time to respond. (*Id.*, ¶ 32.) Additionally, Moss asked an unnamed staff member if weekends counted in the 10 day time frame, and he was led to believe that he could file his complaint a few days late. (*Id.*, ¶ 36.)

On June 7, 2019, the ICE office received inmate complaint RGCI-2019-10223. (ECF No. 16-4 at 11.) In his complaint, Moss states that he was denied medical

treatment "from the time he arrived at RGCI until I had needed kidney surgery in April 2019." (*Id.*) He elaborates, stating, "Upon receiving here at RGCI I complained to HSU about my bleeding kidney, and being denied medical treatment by RGCI medical staff (RN's & MD's) everytime [*sic*] I complained in an HSR, I was told nothing nor seen by HSU RN's as required by BHS Policy 500's. I was left to urinate blood." (*Id.*) Moss's complaint was affirmed by the ICE and the Reviewing Authority. (ECF No. 15, ¶¶ 27, 28). In response to Moss's complaint, RGCI changed its intake process to ensure that new inmates arriving at RCGI are scheduled an appointment with HSU upon arrival. (*Id.*, ¶ 27.) Moss still appealed the complaint because no action or discipline was taken against the nurses who ignored him and because the Reviewing Authority ignored his request for damages. (ECF No. 16-4 at 25.) While the appeal was affirmed, the compensation request was denied because it was outside the scope of relief ICRS could offer. (*Id.* at 9.) However, the appeal decision indicated that the situation would be addressed with the relevant staff members. (*Id.*)

*Analysis*

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust

9

his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). An inmate can show that a grievance process may be unavailable where "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

The defendants argue that Moss properly exhausted his administrative remedies only as to the Second Set of Claims, which concern the medical care he received (or did not receive) between March 13, 2019, through April 7, 2019, while incarcerated at Redgranite. They assert that only one inmate complaint, RGCI-2019-10223, properly addressed his medical care, and that inmate complaint only put the defendants on notice of the Second Set of Claims.

Moss argues that all three of his complaints, when taken as a whole, put the defendants on notice that they violated his constitutional rights. Moss also argues that his corrected inmate complaint, the May 17 Inmate Complaint, was improperly rejected, and that the instructions and procedures related to the ICRS are confusing because they do not clearly identify what constitutes "one issue".

As to Moss's argument that the ICE improperly rejected the May 17 Inmate Complaint because the ICE did not construe his complaint as "one issue", he is contesting the ICE's decision that the May 17 Inmate Complaint still violated the

10

prohibition on inmate complaints containing more than one issue. Substantive challenges to ICRS decisions are not a defense to a failure to exhaust administrative remedies, and if Moss felt that the final decision on the May 17 Inmate Complaint was erroneous, he could have appealed it up through the ICRS or sought relief by certiorari in Wisconsin state court. *See Pirtle v. Cooper*, Case No. 15-CV-685, 2015 WL 4773166 at * 3 (E.D. Wis. Aug. 12, 2015) (citing *State ex rel. Grzelak v. Bertrand*, 263 Wis.2d 678, 687-688 (2003)).

As to Moss's contention that ICRS process fails to define one issue, in Moss's case what constituted one issue was clearly stated. In the May 3, 2019, letter, ICE Beier spelled out what he believed Moss needed to do under the process to successfully file a grievance—he needed to file two separate complaints, one addressing the lack of medical care at New Lisbon, and one addressing the lack of medical care at Redgranite. Thus, Moss cannot argue that the process was so opaque that it was "incapable of use". *Ramirez*, 906 F.3d at 538. "[S]o long as the prison has taken reasonable steps to inform the inmates about the required procedures," a failure to exhaust is not excused. *Id*. ICE Beier reasonably informed Moss what was required, and Moss chose to ignore the instructions Beier provided.

Moss also makes much of the fact that part of the reason the May 17 Inmate Complaint was rejected was because it was late. However, whether the complaint was late is irrelevant, because Beier still had reasonable grounds to reject it based off the fact that it did not contain one issue.

11

According to the record, the only properly filed grievance was RGCI-2019-10223. That grievance put Redgranite on notice that Moss believed that between March 13, 2019, and his April 2019 kidney surgery, he believed he was receiving inadequate medical care in violation of his constitutional rights. Neither the April 29 Inmate Complaint nor the May 17 Inmate Complaint sufficiently demonstrate exhaustion. Thus, the First Set of Claims were not properly exhausted and shall be dismissed. Because defendants Dobbert, Martin, Frisk, and Rink are only implicated in the First Set of Claims, they are dismissed. There is also no record that Moss filed any grievances related to his inadequate care after his April 2019 surgery, so the Third Set of claims are dismissed Because Bellin was implicated in only the Third Set of Claims, she is dismissed. Only the Second Set of Claims against Katherine Thompson and Angela Thompson remain.

## CONCLUSION

The court grants the defendants' motion for partial summary judgment. Because the Second Set of Claims against Katherine Thompson and Angela Thompson survive, the court will set a scheduling conference at a later date to discuss next steps.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment (ECF No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the First Set of Claims and the Third Set of Claims are **DISMISSED without prejudice**. Additionally, defendants Lynn

12

Dobbert, Koreen Frisk, Bridget Rink (k/n/a Bridget Crouse), Maryah Martin, and Debra Bellin are **DISMISSED without prejudice**.

Dated at Milwaukee, Wisconsin this 20th day of December, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge